UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

THE HANOVER INSURANCE COMPANY,

    Plaintiff,

v.                                               Civil Action No. 3:12cv716

WARREN FLYNN CONSTRUCTION
COMPANY, INC. and DAVID. W. FLYNN,

    Defendants.

## REPORT AND RECOMMENDATION

This matter comes before this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on Plaintiff The Hanover Insurance Company's ("Hanover") Corrected Motion for Summary Judgment ("Corrected Motion") against Defendant David W. Flynn. (ECF No. 31.) Flynn, appearing *pro se*, failed to respond to Hanover's Corrected Motion and the time to do so has expired. The matter is now ripe for disposition. The Court dispenses with oral argument because the materials before the Court adequately present the facts and legal contentions, and argument would not aid the decisional process.

For the reasons that follow, the undersigned Magistrate Judge RECOMMENDS GRANTING Hanover's Corrected Motion and RECOMMENDS AWARDING JUDGMENT IN FAVOR OF HANOVER AND AGAINST FLYNN in the amount of $1,619,057.35.[1]

---

[1] This amount represents the corrected amount Hanover seeks in summary judgment. (*See* Hanover's Br. Response to Court's June 25, 2013 Order ("Hanover's Resp. Court Order"), ECF No. 39.)

# I. Factual and Procedural Background

## A. Undisputed Facts[2]

This dispute arises from an agreement between Hanover and Flynn regarding Flynn and Warren Flynn Construction Co.'s ("WFC") work as a general contractor on five construction projects. On December 4, 2006, Hanover, as surety, and WFC and Flynn, as indemnitors, executed an Agreement of Indemnity ("Indemnity Agreement" or "Agreement"). (Pl.'s Mem. Supp. Corrected Mot. Summ. J. ("Mem. Supp.") Attach. 1 Aff. Michael W. Saba ("Saba Aff.") ¶ 4, ECF No. 32-1; Mem. Supp. Attach. 2 Aff. Saleh A. Stevens ("Stevens Aff.") ¶ 4, ECF No. 32-2; Mem. Supp. Ex. 1 Agreement of Indemnity ("Indemnity Agreement") ¶ 2, ECF No. 32-4.) Flynn signed the Indemnity Agreement individually and as President of WFC. (Indemnity Agreement 3-4.)

In paragraph 2 of the Agreement, WFC and Flynn, as indemnitors, agreed to "exonerate, indemnify, and save harmless the Surety [Hanover] from and against every claim, demand, liability, cost, charge, suit, judgment, and expense which the Surety may pay or incur, including, but not limited to, loss, interest, court costs and consultant and attorney fees" as a result of, among others, "having executed or procured the execution of the bonds." (Indemnity Agreement ¶ 2.)

Relying upon the terms of the Agreement, Hanover issued contract payment and performance bonds on WFC's construction projects, naming WFC as the principal and the owner of each construction project as the oblige of the issued bonds. (Saba Aff. ¶ 5; Stevens. Aff. ¶ 5;

---

[2] Flynn, despite notice of the right to respond and the potential effects of the failure to respond, did not respond to Hanover's Corrected Motion, failed to produce his own evidence, and failed to contradict Hanover's evidence. "If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: . . . (2) consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2). Pursuant to Federal Rule of Civil Procedure 56(e), the Court considers Hanover's assertion of facts undisputed.

Mem. Supp. Ex. 2 copies of performance, payment, and labor and material payment bonds issued in the five construction projects ("Ex. 2").) Hanover seeks to enforce the terms of the Indemnity Agreement and to recover losses it sustained as a result of making payments pursuant to its obligations as surety on WFC's construction projects. (Mem. Supp. 16.)

Hanover issued contract payment and performance bonds for five[3] construction projects on which WFC acted as general contractor. (Saba Aff. ¶¶ 5-6; Stevens Aff. ¶¶ 5-6; Ex. 2.) Hanover received payment bond claims, performance bond claims, and complaints regarding WFC's performance on the five construction projects. (Saba Aff. ¶ 7; Stevens Aff. ¶ 7.) Hanover made payments to discharge its obligations under the issued bonds as a result of the payment bond claims, performance bond claims, and complaints made against WFC. (Saba Aff. ¶ 10; Stevens Aff. ¶ 10; Mem. Supp. Exs. 4-6 copies of checks and releases ("Exs. 4-6").) According to Hanover, it incurred losses in the amount of $1,351,605.96, plus $267,451.39 in costs, expenses, consultant and attorney fees, for a total of $1,619,057.35.[4] (*See* Pl.'s Br. Response Court's June 25, 2013 Order ("Hanover's Resp. Court Order"), ECF No. 39.)

To support its claims, Hanover submitted the affidavits of Michael Saba[5] and Saleh

---

[3] The five projects are: (1) the Madison County Courthouse Project; (2) the LDS Church Project; (3) the Transportation Facility Project; (4) the Spotsylvania Clinic Project; and, (5) the Galveston Road Group Home Project. (Mem. Supp. 3.)

[4] On June 25, 2013, this Court ordered Hanover and Flynn to explain mathematical discrepancies appearing in the materials before the Court. (Order June 25, 2013 ("June 25 Order"), ECF No. 38.) Hanover and Flynn responded. (ECF Nos. 39-40, 42.) Hanover's response included an explanation for the discrepancy. Hanover cited the correct amount sought in summary judgment as 1,619,057.35. (Hanover's Resp. Court Order 1.)

[5] Michael W. Saba, Vice President of Guardian Group, Inc., "serve[d] as a surety claims and construction consultant" retained by Hanover's legal counsel to assist in the investigation, review, adjustment, and resolution of surety payment and performance bond claims and enforcing indemnity obligations at issue in this case. (Saba Aff. ¶ 2.)

3

Stevens,[6] and copies of checks and releases submitted to subcontractors to satisfy those claims. (*See* Exs. 4-6.) As noted earlier, Flynn failed to respond to Hanover's Corrected Motion, failed to properly dispute Hanover's presentation of the facts, and failed to submit any evidence on his behalf.

### B. Procedural History

Hanover filed a Complaint against WFC and Flynn seeking, jointly and severally, $1,617,171.50 in damages pursuant to an indemnity agreement between Hanover, WFC, and Flynn. (Compl. ¶¶ 6, 39, 42, 47, ECF No. 1.) Flynn answered the Complaint. (ECF No. 5.) After WFC attempted to answer the Complaint without the representation of an attorney admitted to practice in the United States District Court for the Eastern District of Virginia, the District Court ordered WFC to retain counsel and file its answer. (ECF No. 9.) WFC failed to retain an attorney and did not answer the Complaint. Subsequently, the District Court ordered "that the defendant, Warren Flynn Construction Company, Inc., is in default and the Clerk shall enter an Order of Default forthwith." (ECF No. 10.)

Hanover filed its Request for Entry of Judgment by Default Against Warren Flynn Construction Company, Inc., seeking $1,619,952.14 in damages. (ECF No. 14.) The District Court granted judgment by default against WFC in the amount of $1,617,171.50. (ECF No. 26.)

---

[6] Saleh A. Stevens, Hanover's Senior Claim Counsel, is responsible for adjusting surety payment and performance bond claims and enforcing indemnity obligations, including the bond claims and indemnity issues in this case. (Stevens Aff. ¶ 2.)

On April 29, 2013, Hanover filed its Corrected Motion.[7] (ECF No. 31.) Hanover moves for summary judgment against Flynn pursuant to Federal Rule of Civil Procedure 56(c), arguing that "there are no material facts genuinely in dispute, and that, as a matter of law, it is entitled to summary judgment" against Flynn in the amount of $1,619,057.35.[8] Hanover seeks summary judgment pursuant to Count I (breach of contract) and Count II (breach of fiduciary duty) of the Complaint as a result of the indemnity agreement between the parties. (Mem. Supp. 16.)

On May 15, 2013, the District Court referred Hanover's Corrected Motion to the undersigned Magistrate Judge for a Report and Recommendation. (ECF No. 37.) On June 25, 2013, this Court ordered Hanover and Flynn to explain differences relating to the amount Hanover sought in summary judgment and its supporting evidence. (ECF No. 38.) Hanover responded. (ECF No. 39.) Flynn responded for the first time and attempted to dispute Hanover's evidence. (ECF No. 40.) The Court declines to consider Flynn's response as a refutation of Hanover's evidence. The unsworn, single page document offers inadmissible opinions and factual information. *See* Fed. R. Civ. P. 56(e)(2).

---

[7] On April 23, 2013, the district court denied without prejudice Hanover's earlier filed motion for summary judgment against Flynn (ECF No. 15) "for failure to provide the defendant, David W. Flynn, with proper notice as required by the decision of the United States Court of Appeals for the Fourth Circuit in *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) and Local Rule 7(K)." (ECF No. 20.) On April 26, 2013, the district court granted Hanover's Motion for Leave to File Corrected Motion for Summary Judgment (ECF No. 27) and ordered Hanover to "electronically file its Corrected Motion for Summary Judgment and supporting memorandum forthwith." (ECF No. 30.) Hanover filed its corrected motion as ordered, including the appropriate *Roseboro* notice. (ECF No. 31.)

[8] The Court notes that Hanover sought and received a different amount in its default judgment motion. (*Compare* Request For Entry of Judgment By Default Against Warren Flynn Construction Company, Inc. 4, ECF No. 14, *with*, Order Granting Judgment by Default Against Warren Flynn Construction Company Inc. 3, ECF No. 26.) Hanover explains this difference as a typographical error. (Hanover's Resp. Court Order 2-3, ECF No. 39.)

## II. Standard of Review

Summary judgment under Rule 56 is appropriate only when the Court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Once a party has properly filed evidence supporting the motion for summary judgment, the nonmoving party may not rest upon mere allegations in the pleadings, but instead must set forth specific facts illustrating genuine issues for trial. *Celotex Corp.*, 477 U.S. at 322-24. These facts must be presented in the form of exhibits and sworn affidavits. Fed. R. Civ. P. 56(c).

A court views the evidence and reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255. Whether an inference is reasonable must be considered in conjunction with competing inferences to the contrary. *Sylvia Dev. Corp. v. Calvert Cnty.*, 48 F.3d 810, 818 (4th Cir. 1995). Nonetheless, the nonmoving "party is entitled 'to have the credibility of his evidence as forecast assumed.'" *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990) (en banc) (quoting *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)). Ultimately, the court must adhere to the affirmative obligation to bar factually unsupportable claims from proceeding to trial. *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (citing *Celotex Corp.*, 477 U.S. at 323-24).

## III. Analysis

Because Flynn personally signed the Indemnity Agreement, the Agreement obligates him to indemnify Hanover for losses Hanover sustained in conjunction with WFC's failure to pay subcontractors on WFC construction projects. Therefore, the Court recommends granting

summary judgment in favor of Hanover and against Flynn in the amount of $1,619,057.35. The Court need not address summary judgment for Count II because the Court awards Hanover full relief on Count I. *See The Hanover Ins. Co. v. Jett Mechanical, Inc.*, No. 1:10-cv-1231, 2011 WL 3809634, at *4 (E.D. Va. Aug. 24, 2011) (granting full relief on one count obviates need to address other counts of complaint).

### A. Count One: Breach of Contract

#### 1. Express Agreement to Indemnify

"[E]quity generally implies a right to indemnification in favor of a surety only when the surety pays off a debt for which his principal is liable," but, "resort to implied indemnity principles is improper when an express indemnification contract exists; when there is such an express contract, a surety is entitled to stand upon the letter of his contract." *Fid. & Deposit Co. of Md. v. Bristol Steel & Iron Works, Inc.*, 722 F.2d 1160, 1163 (4th Cir. 1983) (citation omitted) (internal quotation marks omitted). Where, as here, "[t]here is . . . an express indemnification contract," "the rights of the Sureties are not to be determined by general indemnity principles," but rather, "by the letter of [the] . . . contract of indemnification." *Id.* (quotation marks omitted).

The express Indemnity Agreement in this case includes key provisions that obligate Flynn to indemnify Hanover because Flynn signed the Agreement personally, in addition to signing as President of WFC. (*See* Indemnity Agreement 3.)

Pursuant to the Agreement's plain and unambiguous terms, Flynn agreed to "exonerate, indemnify, and save harmless the Surety from and against every claim, demand, liability, cost, charge, suit, judgment and expense which the Surety may pay or incur, including, but not limited to, loss, interest, court costs and consultant and attorney fees: (a) by having executed or procured the execution of the bonds." (*Id.* ¶ 2.)

With respect to the specific amount owed, Flynn also agreed that:

> Payment shall be made to the Surety by the Indemnitors as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefor. Such payment to the Surety shall be: a) if the amount asserted as a claim, demand or suit is an ascertainable or liquidated amount, the amount of the claim, demand, or suit asserted against the bond or bonds by any claimant or obligee, plus the amount the Surety deems sufficient, in its sole discretion, to indemnify and hold it harmless from and against any loss, cost, interest, and expense necessary to defend, investigate, or adjust the claim, demand or suit . . . .

(*Id.* ¶ 3.)

The Agreement gives Hanover, as surety, "the exclusive right to adjust, settle, or compromise any claim, demand, suit or any other proceeding arising out of any bond against the Surety and/or the Indemnitors" and "take whatever action it deems appropriate in response thereto." (*Id.*) Hanover's "determination of whether to defend or settle the same shall be binding and conclusive upon the Indemnitors." (*Id.*)

In the event of any payment or disbursement by Hanover, Flynn agreed "to immediately reimburse [Hanover] for any and all payments and disbursements made . . . under [Hanover's] belief that liability for the payments existed or that payment was necessary or expedient, whether or not such liability, necessity or expediency existed." (*Id.*) "Vouchers or other evidence of payment by the Surety shall be conclusive evidence of the fact and amount of such liability, necessity, or expediency and of the Indemnitors' liability to the Surety therefor." (*Id.*)

With respect to each bond executed by Hanover in connection with a contract, Flynn, as an indemnitor, also agreed to "assign, transfer, convey, and set over" to Hanover "all right, title, and interest in and to" certain aspects of the construction projects, including, "all tools, plants, equipment and materials," the contract, subcontracts, or purchase orders, and all monies retained, due or due in the future on any accounts. (*Id.* ¶ 5.) Flynn appointed Hanover as his "attorney-in-

fact" with "the power, authority and right to exercise all of the rights of the Indemnitors, or any one or more of them." (*Id.* ¶ 9.)

"Provisions such as those just cited, while strict, are common in contracts of indemnification executed by contractors and others to induce the execution of performance bonds by compensated sureties, and they have been uniformly sustained and upheld, subject to a single exception" not relevant here.[9] *Bristol Steel & Iron Works, Inc.*, 722 F.2d at 1163. *See also Jett Mechanical*, 2011 WL 3809634, at *3-4.

The Agreement's express and unambiguous terms require Flynn to indemnify Hanover for Hanover's losses incurred as a result of issuing bonds for WFC's construction projects. WFC failed to satisfy its obligations to subcontractors, and, because Flynn personally signed the Indemnity Agreement, Flynn must now indemnify Hanover for the losses it sustained. *See Jett Mechanical*, 2011 WL 3809634, at *3-4 (granting summary judgment to Hanover against contractor pursuant to identical indemnity agreement terms).

### 2. Hanover's Losses

Pursuant to paragraph three of the Agreement, Hanover submitted evidence of its payments and expenses incurred in the form of check copies and/or signed releases and settlement agreements. (*See* Exs. 4-6.) Hanover also submitted the affidavits of Michael W. Saba, a Vice President of Guardian Group, Inc. and a surety claims and construction consultant, and Saleh A. Stevens, Senior Claim Counsel at Hanover. (Saba Aff. ¶ 2; Stevens Aff. ¶ 2.)

Hanover retained Saba to assist it and its legal counsel with the "investigation, review, adjustment and resolution of surety payment and performance bond claims, and enforcing

---

[9] That exception "arises when the payment has been made through fraud or lack of good faith on the part of the surety but any challenge to such payment must be rested solely on that claim of bad faith or fraud." *Bristol Steel & Iron Works, Inc.*, 722 F.2d at 1163 (citation omitted)

9

indemnity obligations" in connection with WFC and the matters at issue in this case. (Saba Aff. ¶ 2.) Saba has personal knowledge of the facts described in his affidavit. (*Id.*)

As Senior Claim Counsel, Stevens "[is] responsible for adjusting surety payment and performance bond claims and enforcing indemnity obligations." (Stevens Aff. ¶ 2.) Stevens "[has] personal knowledge of all the facts" described in his affidavit. (*Id.*) Stevens details Hanover's losses and expenses incurred as a result of investigating and resolving claims made by WFC's subcontractors against the associated bonds.

In addition to payments to subcontractors, Hanover incurred losses in the form of attorneys' fees and consultant fees. (Saba Aff. ¶ 15; Stevens Aff. ¶ 15.) Saba and Stevens claim knowledge of what constitutes reasonable fees for services rendered by Hanover's attorneys' and consultants and conclude the rates charged and amounts incurred "were reasonable and necessary for the work required and services provided." (Saba Aff. ¶ 16; Stevens Aff. ¶ 16.)

Hanover's evidence reveals a total loss of $1,619,057.35: (1) $1,351,605.96 in payments to subcontractors; and (2) $267,451.39 in payments to attorneys and consultants. (*See* Hanover's Resp. Court Order 5; Mem. Supp. Attach. 3 Aff. Archibald Wallace III ("Wallace Aff.") ¶ 5.) This total reflects an offset for returned contract funds from one of the projects. (*See* Stevens Aff. ¶ 11.)

Relying on Hanover's evidence, this Court concludes that Flynn is obligated to indemnify Hanover for all of its losses, costs, and expenses pursuant to the Indemnity Agreement, that Hanover suffered losses in the amount of $1,619,057.35, and that Hanover is entitled to judgment as a matter of law because there are no genuine issues of material fact.

---

(internal quotation marks omitted). As stated above, Flynn produced no evidence of his own, including no allegation that Hanover acted in bad faith.

### B.   Count Two:  Breach of Fiduciary Duty

"Because the Court is according full relief to [Hanover] by granting summary judgment on Count I of the Complaint, the Court need not address summary judgment in regards to [Count II] of the Complaint." *Jett Mechanical, Inc.*, 2011 WL 3809634, at *4.

### IV. Conclusion

For the foregoing reasons, the Court RECOMMENDS GRANTING Plaintiff's Corrected Motion for Summary Judgment and RECOMMENDS AWARDING JUDGMENT IN FAVOR OF HANOVER AND AGAINST FLYNN in the amount of $1,619,057.35. (ECF Nos. 31, 39.)

The parties are ADVISED that they may file specific written objections to the Report and Recommendation within fourteen (14) days of the date of entry hereof. Each objection should be labeled with the corresponding heading from the Report and Recommendation, should be numbered, and should identify with specificity the legal or factual deficiencies of the Magistrate Judge's findings. Failure to file specific objections to the Report and Recommendation may preclude further review or appeal from such order. *See Wright v. Collins*, 766 F. 2d 841, 844-46 (4th Cir. 1985).

The Clerk is directed to send a copy of the Report and Recommendation to counsel of record and the Honorable Robert E. Payne.

/s/ [signature]
M. Hannah Lauck
United States Magistrate Judge

Richmond, Virginia
Date: 8/19/2013